UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MICHAEL WALKER,
PASTOR SHERYL WALKER,

                    Plaintiffs,

        -against-

JEROME FELLER, U.S. Bankruptcy Court
Judge for the Eastern District,

                   Defendant.
----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. CV-05-2689 (FB)

*Appearances:*
*For the Plaintiffs:*
MICHAEL WALKER, *pro se*
PASTOR SHERYL WALKER, *pro se*
50-20 31st Avenue, Apt. 4-B
Woodside, New York, 11377

**BLOCK, District Judge:**

Plaintiffs Michael Walker ("Mr. Walker") and his half-sister, Pastor Sheryl Walker ("Pastor Walker") (collectively, "the Walkers"), bring this *pro se* action pursuant to the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, principally seeking to enjoin Mr. Walker's eviction by the New York City Housing Authority ("NYCHA"). The Court grants the Walkers' request to proceed *in forma pauperis* and reviews the sufficiency of their complaints *sua sponte*, pursuant to 28 U.S.C. §1915(e)(2)(B).[1] For the reasons set forth

---

[1] On June 3, 2005, plaintiffs commenced this action by filing two related complaints: one against Judge Feller (hereinafter, the "Feller Complaint") and the other against the New York City Housing Authority; Self Help Community Services, Inc.; City Marshall #45, Catherine Stringer; and the Civil Court of the City of New York, Queens County (hereinafter, the "NYCHA Complaint"). The Clerk's Office initially failed to recognize these as two separate complaints and therefore opened only one

below, the complaints are hereby dismissed.

## I.

This action is the latest in a long series of cases which the Walkers have pursued in both state and federal courts to prevent NYCHA from evicting Mr. Walker from an apartment the Walkers both occupy at 50-20 31st Avenue in Woodside, Queens. There is no need to chronicle the history of this litigation in great detail. The following excerpt from the last of three opinions which Judge Nickerson authored in an earlier related case in this epic eviction battle nonetheless provides some context for the instant action:

> [Pastor Walker] lives in her half-brother Michael Walker's Housing Authority apartment in the Woodside Houses housing development in Woodside, Queens. In March, 1992, she moved into the apartment without Mr. Walker's permission, refused to move out, and threatened him with unspecified harm if she were to be removed from the premises.
>
> By letter dated September 11, 1993, Michael Walker advised defendant Ronald Cox, manager of the Woodside Houses housing development, that [Pastor Walker], although not an authorized occupant, had been residing in the Apartment since March, 1992.
>
> On March 3, 1994, Mr. Walker signed a Resident Lease Cancellation Agreement indicating that he would cancel the 1992 Lease to the four-bedroom apartment he had been living in and move into a smaller Housing Authority apartment.
> * * * About a week later, on March 9, 1994, Mr. Walker informed the Housing Authority that he could not give clear title to the four-bedroom apartment and voided the lease to the one-bedroom. He explained that [Pastor Walker] and her

---

case, the caption and docket number of which appears above. Since this Order dismisses both complaints, it is unnecessary to direct the Clerk of Court to open a new case solely to segregate the papers relating to the two complaints.

> fiancé, Mark Hundly, were living in his apartment without his permission, and that he could not take action against them because he feared for his life.
>
> The Housing Authority thereupon initiated [proceedings to terminate] Mr. Walker's tenancy. *** On July 27, 1994, after an administrative hearing at which neither [of the Walkers] appeared, the Housing Authority notified Michael Walker that his tenancy had been terminated.

*Walker v. Cox*, No. 95-CV-1219, 1999 WL 294723, at *1 (E.D.N.Y. Mar. 17, 1999).

In 1995, after NYCHA instituted eviction proceedings in the Housing Part of the Civil Court of the City of New York, Pastor Walker brought a *pro se* action in the Eastern District of New York, alleging violations of the Fair Housing Act and seeking to enjoin NYCHA from "evicting her from her residence because she is a 'light skinned black female with a perceived disability.'" *Id.* After almost four years of litigation, during which Judge Nickerson concluded that Pastor Walker was not a lawful tenant of the apartment and was not entitled to join her half-brother as a tenant of record, *see Walker v. Cox*, No. 95-CV-1219, 1997 WL 177854 (E.D.N.Y. Mar. 27, 1997), the Court dismissed the action for lack of standing. *See Walker v. Cox*, 1999 WL 294723, at *4-5 (E.D.N.Y. 1999).

At some point during the course of this litigation, Mr. Walker was adjudicated mentally incapacitated pursuant to Article 81 of the New York State Mental Hygiene Law. In 1995, upon learning that Mr. Walker was "at risk" of an emotional or psychological disorder, NYCHA postponed the scheduled eviction and reopened the administrative tenancy termination hearing. *Walker v. Cox*, 1999 WL 294723 at *2. Although the New York State Supreme Court initially appointed Pastor Walker as Mr. Walker's guardian, NYCHA refused to accept rent payments tendered by her in March

3

Civil Court's order, ruling that Mr. Walker's "moving papers failed to set forth sufficient facts to establish a meritorious defense to the action and an excusable default." *Id.* The Appellate Term also upheld the Civil Court's refusal to stay Mr. Walker's eviction during the pendency of a bankruptcy case that had been filed by Mr. Walker in the United States Bankruptcy Court for the Eastern District of New York on December 16, 2004. *Id.*

Before NYCHA could take any action to evict Mr. Walker, the bankruptcy petition was dismissed. By order entered May 5, 2005, Bankruptcy Judge Jerome Feller dismissed Mr. Walker's petition on the grounds that Mr. Walker (1) lacked the capacity to file a bankruptcy petition; (2) had filed the petition in bad faith; (3) had failed to file various required documents, and (4) had failed to attend a Section 341 meeting. *In re Walker*, No. 04-27545 (jf), slip op. at p. 2, (Bankr. E.D.N.Y. May 4, 2005). Judge Feller not only lifted the automatic stay in that case, but also ruled that in the event any of the Walkers filed another bankruptcy petition, the automatic stay provision of the bankruptcy law[2] would "not take effect against the New York City Housing Authority, its employees, agents and/or representatives, or against any New York City Marshal or Sheriff so as to bar the New York City Housing Authority from having executed on its behalf a warrant of eviction to regain [possession of Mr. Walker's premises]." *Id.* at 3-4.

Mr. Walker did not appeal Judge Feller's order. Rather, on June 3, 2005 – almost one month after the bankruptcy petition was dismissed but just hours before the scheduled eviction – the Walkers filed the two underlying complaints. The first (the "Feller

---

[2]*See* 11 U.S.C. § 362.

complaint") names only Judge Feller as a defendant; it alleges that the Judge was biased and had discriminated against Mr. Walker on account of his "mental disability." Feller Complaint, ¶¶ 4, 6. The complaint further alleges that Judge Feller "superceded his authority" by denying Mr. Walker's mother (Dolores Walker) and Pastor Walker – neither of whom were parties to the bankruptcy proceedings – the benefit of an automatic stay in any future bankruptcy actions. *Id.* at ¶ 5.

The second complaint (the "NYCHA complaint") alleges that the Civil Court of the City of New York, Queens County; the New York City Housing Authority; City Marshall #45, Catherine Stringer; and Self Help Community Services, Inc., were biased and had discriminated against the Walkers on account of their disabilities. Specifically, the complaint asserts that the Civil Court deprived the Walkers of due process by refusing to compel SHCS to appear in court, and discriminated against Mr. Walker by denying him a hearing on his allegations of fraud against NYCHA, *id.* at ¶¶ 5-6; that NYCHA had attempted to "defraud [Mr. Walker] out of [his] apartment" by "not promptly pursuing rent" in violation of an unspecified "Federal law," NYCHA Complaint, ¶¶ 5, 8; that Marshal Stringer failed "to properly serve the eviction notice pursuant to [New York] Real Property Law and Rules 749 (2) and 735 (1)," and discriminated against Mr. Walker by refusing to refer him to PDA Adult Protective Services, *id.* at ¶ 4; and that SHCS had "abandoned" Mr. Walker by failing to "take control of [his] income to preserve [his] property [and to] ... pay [his] bills," including his rent. *Id.* at ¶ 7.

In both actions, the Walkers requested money damages; a permanent

injunction prohibiting the defendants "from denying [the Walkers] access to a fair hearing and equal protection of the law regardless of [their] disabilit[ies]"; and an injunction and restraining order (1) preventing Marshal Stringer or NYCHA from evicting them, (2) reversing the order dismissing the bankruptcy petition, and (3) reinstating the automatic stay. In addition, the Walkers filed orders to show cause requesting a preliminary injunction and temporary restraining order preventing their eviction. By order dated June 3, 2005, the Court denied preliminary injunctive relief because the Walkers had failed to demonstrate a likelihood of success on the merits.

## II.

### A. Standard of Review

Because the Walkers are proceeding *pro se*, their pleadings must be read liberally and interpreted as raising the strongest arguments they suggest. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the Court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

Under 28 U.S.C. §1915(e)(2)(B), however, a district court must dismiss a case if the court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." An action is frivolous as a matter of law when, *inter alia*, it is based on an "indisputably meritless legal theory"—that is, when it "lacks an arguable basis in law..., or [when] a dispositive defense clearly exists on the face of the complaint."

7

*Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal quotations and citations omitted). For example, "[a] complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.'" *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).

**B. The Walkers' Claims against Judge Feller and the Civil Court of the City of New York**

In this case, a dispositive defense clearly exists on the face of the complaints filed by the Walkers against Judge Feller and the Civil Court. The Walkers' complaint against Judge Feller must be dismissed because judges are absolutely immune from lawsuits alleging that they performed their judicial functions improperly or inadequately. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam); *Montero*, 171 F.3d at 760. Judicial immunity is "an immunity from suit, not just from ultimate assessment of damages," *Mireles*, 502 U.S. at 11 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)), and "applies even when the judge is accused of acting maliciously and corruptly." *Pierson v. Ray*, 386 U.S. 547, 554 (1967). Thus, the Walkers cannot sue Judge Feller for executing his judicial duties in a biased or discriminatory manner.

Similarly, judicial immunity precludes the Walkers from suing the Civil Court, a named defendant in the NYCHA complaint. Like the claims against Judge Feller, the Walkers' claims against the Civil Court are based on allegations that the Civil Court judge executed his judicial duties in a biased or discriminatory manner. *See* NYCHA Complaint ¶ 6 ("The Housing Judge violated our Civil rights, Housing discrimination, our due process rights under the Constitution, the Judge discriminated against my mental

disability, denied us a hearing on fraud and misrepresentation.") The Civil Court is immune from suit on this ground. *See Mireles*, 502 U.S. at 11.

### C. Mr. Walker's Claims Against NYCHA, Marshal Stringer, and SHCS

The majority of Mr. Walker's claims against the remaining defendants named in the NYCHA complaint are barred by the *Rooker-Feldman* doctrine. This doctrine holds that inferior federal courts lack subject-matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 125 S.Ct. 1517, 1521-22 (U.S. 2005). In such cases, federal review, if any, can only occur by way of a certiorari petition to the Supreme Court. *See Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir. 2002); *see also Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002). District courts do not have jurisdiction over challenges to state court decisions arising out of judicial proceedings "even if those challenges allege that the state court's action was unconstitutional." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983). As the Supreme Court recently held, however, *Rooker-Feldman* does not prevent a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. *See Exxon Mobil*, 125 S.Ct. at 1527. "If a federal plaintiff 'presents some independent claim [that is not the result of the state court judgment], albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party ..., then there is jurisdiction and state law determines whether

the defendant prevails under principles of preclusion.'" *Id.* (citing *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993) ("[Plaintiff] has no claim independent of the state court's adverse decision. . . . [Plaintiff] did not suffer an injury out of court and then fail to get relief from state court; its injury came from the [state court's] judgment").

The allegations in the NYCHA complaint demonstrate that the Walkers base their federal complaint in large part upon claimed irregularities in the Civil Court proceeding and the service of the eviction warrant that preceded it, rather than claiming an "independent" injury suffered out of court and distinct from the state court's judgment against them. *Exxon Mobil*, 125 S.Ct. at 1527. As the NYCHA Complaint explains, Mr. Walker complained to the Civil Court about SHCS's failure to make rent payments on his behalf or appear in Court to contest the eviction, and alleged "improper service of the warrant of eviction." NYCHA Complaint, ¶ 5. The Walkers assert that the Civil Court nonetheless "refus[ed] to compel [SHCS] . . . to come to Court" and "refus[ed] to address the . . . improper service of the warrant of eviction." *Id.* The Walkers further allege that the Civil Court failed to give Mr. Walker a hearing on his allegation that NYCHA was attempting to "defraud [Mr. Walker] out of [his] apartment." *Id.* To the extent that the Walkers base their federal complaint upon correctable irregularities in the state court procedures, the Walkers are plainly asking this court to review and reject the state court's judgment, and these claims are therefore barred by *Rooker-Feldman*. The Civil Court ultimately entered a default judgment against Mr. Walker, and that judgment was affirmed on appeal by the Supreme Court, Appellate Term. While the Walkers could have sought

to appeal the Appellate Term's ruling in State court, the *Rooker-Feldman* doctrine precludes this Court's review of either the Civil Court or Appellate Term rulings with respect to these issues. *See Exxon Mobil*, 125 S.Ct. at 1521-22.

To the extent that the NYCHA complaint asserts a federal claim that is independent of the state court judgment, however, *Rooker-Feldman* does not deprive the court of subject-matter jurisdiction. The Walker's allegation that NYCHA violated federal law by failing to promptly pursue a non-payment action for over two years "to ensure that public assistance would never pay the rent because it would be too much and too old" presents a claim that is independent of any injury caused by the state court's judgment. NYCHA Complaint ¶ 8. In such a case, *Rooker-Feldman* does not deprive the court of subject-matter jurisdiction, and principles of preclusion would ordinarily be applied to determine whether the prior state proceedings bar this claim. *See Exxon Mobil*, 125 S.Ct. at 1527. In this case, the Walkers do not specify what federal law NYCHA's actions are alleged to have violated. Research by the Court suggests that Mr. Walker may state a colorable federal claim under 42 U.S.C. § 1437d(c)(4)(B), which requires local public housing authorities to develop "sound and efficient management programs and practices to assure the prompt payment and collection of rents." *Beckham v. New York City Housing Authority*, 755 F.2d 1074, 1078 (2d Cir. 1985).[3]

However, even assuming that Mr. Walker has stated a colorable claim under

---

[3] Although Mr. Walker's claim that SHCS failed in its guardianship duties to him is also independent of the state court's judgment, the Court lacks subject-matter jurisdiction over this claim, which alleges only a violation of state law.

11

§ 1437d(c)(4)(B), dismissal of Mr. Walker's complaint is required because Mr. Walker lacks the capacity under New York state law to bring this action. Under the Federal Rules of Civil Procedure, "[t]he capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile." Fed. R. Civ. P. 17(b); *see also D'Ippolito v. Cities Service Co.*, 374 F.2d 643, 647 (2d Cir. 1967) (holding New York law applicable in antitrust action filed in New York federal district court on issue of capacity of individual plaintiffs to sue); *Yonkers Com'n on Human Rights v. City of Yonkers*, 654 F. Supp. 544, 551 (S.D.N.Y. 1987) (stating that capacity of commission to sue was to be determined by New York state law, in accordance with F.R.C.P. 17(b)) (citing 3A Moore's Federal Practice ¶ 17.25 (1986)). Having been adjudicated an incapacitated person pursuant to Article 81 of the New York Mental Hygiene Law, Mr. Walker may not initiate or prosecute a civil action, but must appear by his guardian *ad litem*. *See* N.Y.C.P.L.R. § 1201.[4]

### D. Pastor Walker's Claims against NYCHA, Marshal Stringer, and SHCS

Finally, Pastor Walker, who is not a tenant of record, lacks standing to sue NYCHA or Marshal Stringer for the reasons set forth in Judge Nickerson's opinion in *Walker v. Cox*, 1999 WL 294723, at *4-5. Pastor Walker similarly lacks standing to sue

---

[4]While an incapacitated person cannot commence a civil action on his or her own behalf, however, the Mental Hygiene Law specifically provides that such a person can seek to remove the guardian "when the guardian fails to comply with an order, is guilty of misconduct, or for any other cause which to the court shall appear just." N.Y. Mental Hygiene L. § 81.35. Thus, while Mr. Walker lacks capacity to sue his guardian in this Court, he can nonetheless bring SHCS's alleged misconduct to the attention of the State court which appointed SHCS by making a motion to remove the guardian.

SHCS. Because she is an unauthorized tenant and would be subject to eviction even if SHCS had paid Mr. Walker's rent or appeared in Civil Court on Mr. Walker's behalf, she cannot show that her claimed injury is the result of an act or omission on the part of SHCS or that a favorable decision would redress her injury. *See Bennett v. Spear*, 520 U.S. 154, 167 (U.S. 1997) (stating that plaintiff's injury must be fairly traceable to the challenged action of the defendant, and it must be likely that the injury will be redressed by a favorable decision). In addition, to the extent that Pastor Walker alleges injury as a result of SHCS's failure to fulfill its guardianship duties to Mr. Walker, the Court lacks subject-matter jurisdiction over this claim, which, like Mr. Walker's claim against SHCS, alleges only a violation of state law.

## CONCLUSION

For the reasons set forth above, the Walkers' complaints, filed *in forma pauperis*, are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court certifies pursuant to 28 U.S.C. §1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

                                              FREDERIC BLOCK
                                              United States District Judge

Brooklyn, New York
August 16, 2005